UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

UNITED STATES OF AMERICA,                          Case No. 6:03-cr-60100-AA

         Plaintiff,                                OPINION AND ORDER

    v.

JAMES ERVIN BROWN,

         Defendant.

_____

AIKEN, Judge:

        Defendant pled guilty to one count of felon in possession of a firearm in violation of 18

U.S.C. § 922(g)(1) and one count of fraudulently using an access device. At sentencing, I determined

that defendant's prior convictions rendered him a career offender under the Armed Career Criminal

Act (ACCA), and I imposed the mandatory-minimum sentence of fifteen years' imprisonment for the

firearms offense. See 18 U.S.C. § 924(e)(1). Defendant now moves to vacate and correct his

sentence under 28 U.S.C. § 2255. Defendant argues that, pursuant to Johnson v. United States, 135

S. Ct. 2551 (2015), his prior convictions for first-degree burglary of a dwelling no longer support the

ACCA sentencing enhancement. The government opposes the motion and contends that defendant's

burglary conviction remains a viable, predicate offense under the ACCA.

        On January 6, 2016, the court heard oral argument in this case and several others

consolidated for purposes of argument. Ultimately, I agree with the government that first-degree

1  -  OPINION AND ORDER

burglary in Oregon generally *should* qualify as the violent felony of "burglary," based on the legislative history of the ACCA and the seminal case interpreting it. See Taylor v. United States, 495 U.S. 575 (1990). However, given the Supreme Court's decision in Descamps v. United States, 133 S. Ct. 2276 (2013) and the Ninth Circuit rulings issued in its wake, I cannot find that first-degree burglary of a dwelling in Oregon is a qualifying offense for purposes of the ACCA sentencing enhancement. Accordingly, defendant's motion is granted.

## DISCUSSION

**A.    The ACCA and Defendant's Prior Conviction for First-Degree Burglary**

The ACCA mandates a fifteen-year minimum sentence in cases where a defendant convicted of a firearms offense has three prior convictions for "a violent felony or a serious drug offense, or both." 18 U.S.C. § 924(e)(1). The ACCA defines "violent felony" as an offense that: 1) "has as an element the use, attempted use, or threatened use of physical force against the person of another"; 2) "is burglary, arson, or extortion, [or] involves use of explosives"; or 3) "otherwise involves conduct that presents a serious potential risk of physical injury to another." Id. § 924(e)(2)(B)(i)(ii). The last alternative has been referred to as the "residual clause"; it is a catch-all provision intended to encompass other offenses, similar to those enumerated above, which pose risks of violence or injury. Begay v. United States, 553 U.S. 137, 142-44 (2008). Although the Supreme Court has upheld the residual clause in several cases, the Court in Johnson ultimately invalided it as unconstitutionally vague, finding that the clause "leaves grave uncertainty about how to estimate the risk posed by a crime" and "about how much risk it takes for a crime to qualify as a violent felony." Johnson, 135 S. Ct. at 2557-58.[1] As a result, an ACCA violent felony must involve an element with some degree of force or constitute burglary, arson, extortion, or an explosives offense.

---

[1] In previous cases, the Supreme Court discussed whether certain offenses qualified as violent felonies; in each case, the Court did not invalidate and, in essence, upheld the residual clause. Sykes v. United States, 131 S. Ct. 2247 (2011) (Indiana offense of vehicular flight from a law-enforcement officer qualified as violent felony under residual clause); Chambers v. United States, 555 U.S. 122 (2009) (Illinois offense of failure to report to a penal institution did not qualify); Begay, 553 U.S.

2  - OPINION AND ORDER

In this case, defendant's criminal history includes three convictions for first-degree burglary of a dwelling. At sentencing, I found that defendant's convictions were predicate offenses under the ACCA, and I imposed the mandatory minimum sentence of fifteen years.

After the Supreme Court issued its decision in <u>Johnson</u>, defendant moved under § 2255 to vacate and correct his sentence. The parties agree that defendant's § 2255 motion is properly before the court, because the basis on which sentence was imposed has been held unconstitutional pursuant to a "new" rule of constitutional law that was "previously unavailable" to defendant. <u>See</u> Gov't Consolidated Ans. at 11-12 ("The government waives any and all potentially applicable procedural barriers and the right to enforce collateral review waivers so that defendants can test the legality of their sentences."). The parties also agree that that if defendant's first-degree burglary conviction is not otherwise a violent felony under the ACCA, he should be released from prison.

**B.    In the Ninth Circuit, First-Degree Burglary of a Dwelling Does Not Constitute a Violent Felony Under the ACCA.**

Under Oregon law, "a person commits the crime of burglary in the second degree if the person enters or remains unlawfully in a building with intent to commit a crime therein." Or. Rev. Stat. § 164.215. The offense constitutes first-degree burglary if "the building is a dwelling." <u>Id.</u> § 164.225(1).[2] Plainly, first-degree burglary of a dwelling does not involve "the use, attempted use, or threatened use of physical force." 18 U.S.C. § 924(e)(2)(B)(i). Therefore, defendant's conviction must qualify as the enumerated offense of "burglary." <u>Id.</u> § 924 (e)(2)(B)(ii).

The ACCA does not define burglary. In <u>Taylor</u>, the Supreme Court discussed the relevant legislative history and held that burglary under the ACCA means the equivalent of "generic

---

137 (New Mexico offense of driving under the influence of alcohol did not qualify); <u>James v. United States</u>, 550 U.S. 192 (2007) (Florida offense of attempted burglary qualified).

[2] Alternatively, a person commits first-degree burglary if, while unlawfully entering or remaining in a building (or fleeing therefrom), the person: 1) is armed with a burglary tool, theft device, or deadly weapon; 2) causes or attempts to cause physical injury; or 3) uses or threatens to use a dangerous weapon. Or. Rev. Stat. § 164.225(1)(a)-(c). These non-dwelling alternatives are not at issue in this case.

burglary," the elements of which are the "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." Taylor, 495 U.S. at 599. Taylor also delineated two methods courts may use to determine whether a defendant was convicted of an enumerated generic offense: the categorical and the modified-categorical approaches. Id. at 601-02.[3]

Under the categorical approach, the court compares the offense of conviction to the elements of the generic offense; in this case, burglary. Id. at 602; see also Descamps, 133 S. Ct. at 2281. A prior burglary conviction is a "categorical" match if "its statutory definition substantially corresponds to 'generic' burglary" by including "the basic elements" of the generic offense. Taylor, 495 U.S. at 599, 602. However, if the statute of conviction defines burglary "more broadly" and criminalizes conduct beyond the elements of the generic offense, id. at 599, "a conviction under that law cannot count [categorically] as an ACCA predicate, even if the defendant actually committed the offense in its generic form." Descamps, 133 S. Ct. at 2283.

The court may proceed under the modified-categorical approach if the statute, though overbroad, provides alternatives that correspond with the elements of the generic offense. Descamps, 133 S. Ct. at 2281. In these cases, the sentencing court may "look beyond the statutory elements," id. at 2284, and review a limited set of documents to determine whether the statutory alternative matching the generic offense formed the basis of the defendant's conviction. These documents may include the charging documents, jury instructions, plea agreement, and plea colloquy. Id. at 2281, 2284; Johnson v. United States, 559 U.S. 133, 144 (2010) (Johnson I); Shepard v. United States, 544 U.S. 17, 26 (2005); Taylor, 495 U.S. at 602. Importantly, a sentencing court cannot use the modified categorical approach "to try to discern what a trial showed, or a plea proceeding revealed, about the defendant's underlying conduct." Descamps, 133 S. Ct at 2288. The focus is instead on whether the

---

[3] Taylor did not coin the phrase "modified categorical approach"; it was first introduced by the Circuit Courts and ultimately adopted by the Supreme Court. See Gonzales v. Duenas-Alvarez, 549 U.S. 183, 187 (2007) (recognizing Circuit Courts had referred to inquiry as "modified categorical approach"); see also United States v. Parker, 5 F.3d 1322, 1325-26 (9th Cir. 1993) (discussing "Taylor-modified categorical approach").

documents show that the elements of the generic offense were found by a jury or admitted by the defendant. Taylor, 495 U.S. at 602; see also Shepard, 544 U.S. at 20-21.

**1. Categorical Approach**

At first glance, Oregon's first- and second-degree burglary statutes categorically meet the elements of generic burglary; both statutes include elements of unlawfully entering or remaining in a building or structure with the intent to commit a crime. Taylor, 495 U.S. at 598 (generic burglary is the "unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime"). However, according to the Ninth Circuit, the "building" of generic burglary is limited to "a structure designed for occupancy that is intended for use in one place." Grisel, 488 F.3d at 848.[4] Oregon defines the term building, "in addition to its ordinary meaning," as "any booth, vehicle, boat, aircraft or other structure adapted for overnight accommodation of persons or for carrying on business therein." Or. Rev. Stat. § 164.205(1). Consequently, the Ninth Circuit has held that the elements of Oregon second-degree burglary "sweep more broadly" than the elements of generic burglary, because the Oregon definition of building includes movable structures such as vehicles. Grisel, 488 F.3d at 850-51.

The Ninth Circuit has reached the same conclusion with respect to first-degree burglary of a dwelling. "Dwelling" is defined as "a building which regularly or intermittently is occupied by a

---

[4] In so holding, the Ninth Circuit emphasized Taylor's citation to W. LaFave & A. Scott, *Substantive Criminal Law* (1986) when adopting the definition of generic burglary. Grisel, 488 F.3d at 848-49. The Ninth Circuit likewise relied on LaFave & Scott in finding that most state burglary statutes excluded structures that were "not designed for occupancy [and] not intended for use in one place." The Ninth Circuit thus asserted that it "was this understanding of 'building or structure' that the Court adopted." Id. at 849. The dissent in Grisel vigorously opposed the majority's definition of building, emphasizing that Taylor had imposed no such limitations and had specifically included the terms "building *or other structure*," a phrase that would seemingly correspond with Oregon's definition. Grisel, 488 F.3d at 856-57 (Bea, J., dissenting). The Grisel dissent also pointed out that Oregon defines "building" more narrowly than the generic element, because a "building" must be "adapted for overnight accommodation of persons or for carrying on business therein." Or. Rev. Stat. § 164.215(1); Grisel, 488 F.3d at 854-56 (Bea, J., dissenting). Finally, the dissent noted that the state burglary statutes cited in LaFave & Scott did not limit buildings to structures designed for occupancy and use in one place. Id. at 857, n.7.

person lodging therein at night, whether or not a person is actually present." Or. Rev. Stat. § 164.205(2). Because the definition of dwelling necessarily incorporates the definition of building, the Ninth Circuit has held that the elements of Oregon's first-degree burglary statute are broader than those of generic burglary. Mayer, 560 F.3d at 959 (holding that Oregon's first-degree burglary statute "does not categorically satisfy the generic definition of burglary"); see also Wenner, 351 F.3d at 972 ("burglary of a dwelling" under the Guidelines career offender provision must comport with "generic burglary" under Taylor and involve a "building or structure").[5]

Until the Court's recent decision in Johnson, the categorical-approach holdings of Grisel and Mayer remained largely academic, because first-degree burglary of a dwelling nonetheless constituted a "violent felony" under the residual clause. See James, 550 U.S. at 203; Mayer, 560 F.3d at 963. In light of Johnson, perhaps the Ninth Circuit should reexamine whether burglary of a dwelling is narrower than generic burglary and therefore qualifies as a violent felony.

In Taylor, the Court exhaustively examined the legislative history of the ACCA and underscored the fact that Congress had rejected the traditional, common-law definition of burglary - the "breaking and entering of the dwelling house of another in the nighttime with the intent to commit a felony" - in favor of the "broader 'generic' definitions." Taylor, 495 U.S at 580 & n.3, 581-95. The Court also highlighted a Senate Report explaining why:

> Because of the wide variation among states and localities in the ways that offenses are labeled, the absence of definitions raised the possibility that culpable offenders might escape punishment on a technicality. For instance, the common law definition of burglary includes a requirement that the offense be committed during the nighttime and with respect to a dwelling. *However, for purposes of this Act, such limitations are not appropriate.*

---

[5] The Guidelines career offender provision includes "burglary of a dwelling" as a predicate offense. Wenner held that Taylor's definition of generic burglary applied to "burglary of a dwelling," and that Washington's residential burglary statute defined "dwelling" more broadly by including "things that are…not buildings or structures." Wenner, 351 F.3d at 972; but see United States v. Guerrero-Navarro, 737 F.3d 976, 979-80 (5th Cir. 2013) (finding the same Washington second-degree burglary statute qualified as "burglary of a dwelling"). As in Grisel, the dissent thoughtfully explained its disagreement with the majority, emphasizing that "we do not apply Taylor's general definition to more specific types of burglary." Wenner, 351 F.3d at 978 (Wallace, J., dissenting).

Id. at 582 (quoting S. Rep. No. 98–190 at 20 (1993)) (emphasis added). As recognized by the Supreme Court, Congress considered the dwelling and nighttime elements of common-law burglary to be "limitations" on, and thus narrower than, "generic" burglary. Indeed, the Court specifically remarked: "If the state statute is *narrower* than the generic view, *e.g.*, in cases of burglary convictions in common-law States or convictions of first-degree or aggravated burglary, *there is no problem.*" Id. at 599 (emphasis added).  Given that the element of dwelling is considered "narrower than the generic view," first-degree burglary of a dwelling is arguably narrower than generic burglary, regardless of the definition of "building."[6]

However, as the law currently stands in the Ninth Circuit, first-degree burglary of a dwelling in Oregon does not qualify categorically as a predicate offense under the ACCA because of the overbroad definition of building. The government concedes this point.

**2. Modified Categorical Approach**

Defendant argues that the modified categorical approach is inapplicable because Oregon's first-degree burglary statute is not divisible into elements that match generic burglary as required by the Supreme Court's discussion in Descamps and the Ninth Circuit's decision in Rendon v. Holder, 764 F.3d 1077 (9th Cir. 2014). See also United States v. Almanza-Arenas v. Lynch, 809 F.3d 515 (9th Cir. 2015) (en banc); United States v. Dixon, 805 F.3d 1193 (9th Cir. 2015).[7]  The government

---

[6] Notably, Congress included burglary as a violent felony because of the inherent risk of violence arising from offenders' potential contact with a third party. Taylor, 495 U.S. at 581 (quoting Senate Report 98-190 stating "[w]hile burglary is sometimes viewed as a non-violent crime, its character can change rapidly, depending on the fortuitous presence of the occupants of the home when the burglar enters, or their arrival while he is still on the premises"); id. at 588 ("The legislative history also indicates that Congress singled out burglary...for inclusion as a predicate offense ... because of its inherent potential for harm to persons. The fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate.").

[7] Defendant also argues that the "enters or remains unlawfully" element of the Oregon burglary statute is overbroad and indivisible, pursuant to the Ninth Circuit decision in United States v. Wilkinson, 589 Fed. App'x 348 (9th Cir. 2014). There, the Ninth Circuit held that the identical "enters or remains unlawfully" element of the Washington residential burglary statute is "broader

responds that <u>Descamps</u> and, particularly, <u>Rendon</u> and its progeny, cannot trump valid Supreme Court precedent approving the use of the modified categorical approach to determine whether defendant's first-degree burglary conviction necessarily encompassed the elements of generic burglary.

Oregon's first-degree burglary statute includes a building according to its "ordinary meaning" and thus matches the generic element. However, the statute also incorporates other definitions of building - a vehicle, boat, or aircraft - that do not match <u>Grisel</u>'s definition of the generic element. Given the alternatives of building, I agree with the government that the court should be able to employ the modified categorical approach to determine which alternative was the basis for defendant's conviction. See <u>Johnson I</u>, 559 U.S. at 144 ("the 'modified categorical approach' that we have approved permits a court to determine which statutory phrase was the basis for the conviction" by consulting the record) (citation omitted); <u>Shepard</u>, 544 U.S. at 17-18 (explaining application of modified categorical approach to burglary statute that defined burglary "more broadly" than generic burglary, "as by expending it to entries into boats and cars"); <u>Taylor</u>, 495 U.S. at 602 (modified categorical approach applied where a State's "burglary statutes include entry of an automobile as well as a building"); see also <u>Descamps</u>, 133 S. Ct. at 2284 (noting the modified categorical approach had been applied "to determine if the defendant had pleaded guilty to entering a building, or alternatively, a car or a boat" and to "assess whether the plea was to the version of the crime").

However, under <u>Descamps</u>, the modified categorical approach applies only "when a prior conviction is for violating a so-called 'divisible statute'" rather than an "indivisible" one. 133 S. Ct.

---

than generic burglary because it does not require 'an unlawful entry along the lines of breaking and entering.'" <u>Id.</u> at 350 (quoting <u>Descamps</u>, 133 S. Ct. at 2285). Thus, the Ninth Circuit held that the defendant's burglary conviction was not an ACCA offense because he "was charged and convicted, then, of a crime including the single, indivisible element of 'enters or remains unlawfully.'" <u>Id.</u> However, the definition of generic burglary begins and ends with <u>Taylor's</u>: the "unlawful or unprivileged entry into, *or remaining in*, a building or structure, with intent to commit a crime." <u>Taylor</u>, 495 U.S. at 599 (emphasis added). Regardless of whether "enters or remains unlawfully" is divisible, this phrase categorically matches the corresponding element of generic burglary, and the modified categorical approach is irrelevant.

at 2281; see also id. at 2296 (Alito, J., dissenting) (stating that the majority's holding is "based on the distinction between 'divisible' and 'indivisible' statutes"). Specifically, a statute is divisible when it "lists multiple, alternative elements and so effectively creates 'several different . . . crimes.'" Descamps, 133 S. Ct. at 2281, 2285 (citation omitted). Descamps also implied that these "elements" are those on which a jury must unanimously agree in order to convict. E.g., id. at 2288 ("The Sixth Amendment contemplates that a jury - not a sentencing court - will find such facts, unanimously and beyond a reasonable doubt. And the only facts the court can be sure the jury so found are those constituting elements of the offense.").

   In Rendon, the Ninth Circuit further "clarified how to distinguish truly divisible from indivisible statutes." Lopez-Valencia v. Lynch, 798 F.3d 863, 868 (9th Cir. 2015). Specifically, "[t]he critical distinction is that while indivisible statutes may contain multiple, alternative *means* of committing the crime, only divisible statutes contain multiple, alternative *elements* of functionally separate crimes." Rendon, 764 F.3d at 1084-85. The Ninth Circuit emphasized that true elements of an offense are "those circumstances on which the jury must unanimously agree," while mere means of committing an offense are "those circumstances on which the jury may disagree yet still convict." Rendon, 764 F.3d at 1086; Dixon, 805 F.3d at 1198 ("But if a statute contains only alternative means, a jury need not agree as to *how* the statute was violated, only that it was."). To distinguish elements from means, the sentencing court should look to the relevant state law and determine "whether the state treats the [alternative] parts of the statute...as alternative elements or alternative means." Rendon, 764 F.3d at 1088-89; id. at 1086 (only when state law requires juror unanimity can the court "conclude that the statute contains alternative *elements* and not alternative *means*"). Rendon ultimately held: "Any statutory phrase that - explicitly or implicitly - refers to multiple, alternative means of commission must still be regarded as indivisible if the jurors need not agree on which method of committing the offense the defendant used." 764 F.3d at 1085.[8]

---

   [8] Based on this distinction between alternative elements and alternative means, the Ninth

Thus, to be considered "divisible," it is not enough for a statute to include alternative phrases or definitions that substantially correspond with the generic offense; the statutory alternatives must also mirror the elements of the generic offense and constitute separate "elements" that must be found unanimously by a jury under the relevant state law. See Descamps, 133 S. Ct. at 2296 (Alito, J., dissenting) (under the majority reasoning, a statute is divisible "only if the offense in question includes as separate elements all of the elements of the generic offense," elements "on which a jury must agree by the vote required to convict"); see also Almanza-Arenas, 809 F.3d at 524 ("The means or methods of committing the element of the offense do not make [a] statute divisible, because the trier of fact does not need to agree" about the method or means in order to convict).

Pursuant to this framework, I first consider whether Oregon's first-degree burglary statute is "divisible" into alternative elements "of functionally separate crimes" requiring juror unanimity under Oregon law, at least one of which matches the elements of generic burglary. Rendon, 764 F.3d at 1084-85; see also Descamps, 133 S. Ct. at 2285 ("If at least one, but not all of those [alternative] crimes matches the generic version, a court needs a way to find out which the defendant was convicted of."). If the statute is not divisible, the inquiry ends and defendant's prior burglary conviction does not constitute a predicate ACCA offense.

As noted above, a person commits first-degree burglary in Oregon by: 1) entering or remaining unlawfully in a building that is a dwelling with the intent to commit a crime; or by 2) unlawfully entering or remaining in a building, while a) carrying a tool or weapon, b) causing or attempting to cause injury, or c) threatening to cause injury. Or. Rev. Stat. § 164.225(1). Clearly, the statute provides alternative elements of functionally separate crimes; one that involves a dwelling and others that do not. See Or. U.Cr.J.I. 1901 (Burglary in the First Degree – Dwelling); Or. U.Cr.J.I.

---

Circuit in Rendon found that the "intended crime" element of California's second-degree burglary statute - entering certain premises "with intent to commit grand or petit larceny or any felony" - constituted alternative "means" of committing the crime instead of alternative "elements." Rendon, 764 F.3d at 1089-90. Thus, the court held that the statute was "indivisible" and did not meet the generic elements of attempted theft.

1902 (Burglary in the First Degree – Other Than Dwelling). However, the inquiry does not end

there; the issue here is whether the statute is divisible when the dwelling alternative incorporates

alternative definitions of "building," several of which do not match the generic element.[9]

Defendant argues that the Oregon definitions of building are not alternative "elements" of

functionally different offenses, but rather alternative means of committing the offense of burglary.

Defendant emphasizes that neither a jury (at trial) nor a judge (during a plea hearing) is required to

find that the defendant burglarized a dwelling that was an "ordinary" building - as opposed to a

booth, vehicle, or boat - in order to convict. See Or. U.Cr.J.I. 1901 (jury must find that the defendant

"entered or remained unlawfully in the premises described in the charge" and that the "premises …

is a dwelling"); Or. U.Cr.J.I. 1900 (providing statutory definitions of "dwelling" and "building").

Defendant thus maintains that the alternatives of "building" are not elements of functionally separate

offenses that must be found by a jury under Oregon law, and this court must follow Ninth Circuit

precedent and find that the definition of "building" is indivisible and precludes application of the

modified categorical approach.

Notably, the cases relied on by defendant involved statutes that either had no alternative

matching the generic offense, Descamps, 133 S. Ct. at 2282-83 (no "unlawful" entry element); or

had elements that could be satisfied by alternative types of conduct or intent, without jury unanimity

as to what specific conduct or intent of the defendant satisfied the element. Almanza-Arenas, 809

F.3d at 521, 528 (discussing phrase "with intent either to permanently or temporarily deprive");

Dixon, 805 F.3d at 1196, 1198 (discussing phrase "taking of personal property" from another's

"person or immediate presence, and…accomplished by force or fear"); Rendon, 764 F.3d at 1084,

1089 (discussing phrase "with intent to commit grand or petit larceny or any felony"). None of these

---

[9] Both parties assume that the court should look beneath the statutory elements of § 164.225 and determine whether the incorporated definitions of "building" constitute divisible elements of first-degree burglary. The district courts discussing this issue have approached the analysis in this manner, and I do the same. See, e.g., United States v. Gray, 2016 WL 224111, at *4 (E.D. Wash. Jan. 19, 2016); United States v. Bayya, 2015 WL 8751795, at *3 (D. Or. Dec. 14, 2015).

cases contemplated the type of statute at issue here: one with a divisible, alternative element that matches the generic offense but for an incorporated definition that "sweeps more broadly" than the generic element. In this circumstance, must the definition of "building" still be found "divisible" before the court may apply the modified categorical approach? Based on the expansive dicta of Descamps and the holding in Rendon, the answer is yes.

As described above, Descamps and Rendon seemingly require each alternative definition of building to constitute a separate "element" of burglary that must be found unanimously by the jury in order to convict. If so, I cannot find that the definitions of building are alternative elements. Several judges in this District have agreed and held that the term building does not define separate elements and precludes application of the modified categorical approach. United States v. Snyder, 5 F. Supp. 3d 1258, 1263 (D. Or. 2014) ("The text of the Oregon burglary statute indicates that 'building' is a single element."), on stipulated remand after second appeal, Case No. 1:09-30033-MC (D. Or. Jan. 27, 2016); United States v. Bayya, 2015 WL 8751795, at *3 (D. Or. Dec. 14, 2015) ("building' is a single element of first-degree burglary and does not encompass separate, alternative crimes"); United States v. Stetzer, Case No. 3:12-cr-00647-BR (D. Or. Jan. 13, 2016); see also United States v. Hines, --- F. Supp. 3d ---, 2015 WL 8668222, at *2 (E.D. Wash. Dec. 11, 2015) (finding Washington's second degree burglary statute indivisible, because the overbroad definition of building "is contained in a separate definitional statute rather than contained within the statute itself" and was not an alternative element); Summers v. Feather, --- F. Supp. 3d. ---, 2015 WL 4663277 at *6 (D. Or. Aug. 5, 2015) (finding that the "definition of 'building' provides alternative means of committing that crime, but does not define functionally separate crimes.").

Ultimately, I am obligated to follow Descamps and Rendon, both as a matter of binding precedent and for purposes of consistency within this District. With that said, I also explain my deep-seated disagreement with the analysis compelled by Descamps and Rendon and my opinion that neither the actual holding of Descamps nor the well-established precedent of the Supreme Court

limits the application of the modified categorical approach to only statutes with "divisible elements" as described by <u>Descamps</u> and <u>Rendon</u>.

## C.  The Divisibility Analysis is Unnecessary and Inconsistent With Supreme Court Precedent

At its core, <u>Descamps</u> holds that a sentencing court may not employ the modified categorical approach to supply a necessary element of a generic offense when the underlying statute of conviction does not include that element in the alternative. The California burglary statute at issue in <u>Descamps</u>, the infamous § 459, did not include the generic-burglary element of "unlawful" entering or remaining in a building, and the statute had no alternative including the unlawful element. <u>Descamps</u>, 133 S. Ct. at 2285-2286. Thus, the divisibility of the statute was unnecessary to the Court's ultimate holding. As the Court explained, the reason the modified categorical approach did not apply to § 459 was *not* because "unlawful entry" was included in an "indivisible" set or series of elements; rather, the problem was that § 459 did not include the "unlawful entry" element at all. The Court stated:

> *The dispute here does not concern any list of alternative elements. Rather, it involves a simple discrepancy between generic burglary and the crime established in § 459.* The former requires an unlawful entry along the lines of breaking and entering. The latter does not, and indeed covers simple shoplifting, as even the Government acknowledges. In <u>Taylor</u>'s words, then § 459 "define[s] burglary more broadly" than the generic offense. And because that is true – because California, to get a conviction, need not prove that Descamps broke and entered – a § 459 violation cannot serve as an ACCA predicate.

<u>Descamps</u>, 133 S. Ct. at 2285-86 (emphasis added) (citations omitted). "So understood, the modified approach cannot convert Descamps' conviction under § 459 into an ACCA predicate, because that state law defines burglary *not alternatively*, but only more broadly than the generic offense." <u>Id.</u> at 2283.

In other words, § 459 did not include every element of generic burglary and the defendant could not have been convicted of an offense matching generic burglary, regardless of whether he

admitted to unlawfully entering a building. <u>Descamps</u> thus held that the modified categorical approach could not be employed to cure this basic defect.

In contrast, Oregon's first-degree burglary statute defines burglary alternatively and not "only more broadly." The dwelling alternative includes every element of generic burglary: unlawfully entering or remaining in dwelling that is a building (including one in the "ordinary" sense), with intent to commit a crime. Accordingly, unlike the circumstances in <u>Descamps</u>, a defendant in Oregon *can be* convicted of the elements of generic burglary, and the modified categorical approach would simply allow the court to determine whether the defendant actually *was* convicted of generic burglary. In fact, several Circuits have found that statutes including alternative definitions of a building or structure are divisible and permit the modified categorical approach. <u>See United States v. Ozier</u>, 796 F.3d 597, 601-603 (6th Cir. 2015) (holding Tennessee's "habitation" definition divisible and subject to modified categorical test); <u>United States v. Patrie</u>, 794 F.3d 998, 1003 (8th Cir. 2015) (finding Iowa's "occupied structure" definition divisible); <u>see also United States v. Ridens</u>, 792 F.3d 1270, 1272 (10th Cir. 2015) (applying modified categorical approach to Kansas burglary statute prohibiting unlawful entry into "building, mobile home, tent or other structure"). Likewise, the modified categorical approach should be available in this case to discern whether burglary of an "ordinary" building formed the basis of defendant's conviction.

Unfortunately, <u>Descamps</u> went far beyond its ultimate holding and focused on an irrelevant distinction between elements and means that conflicts with existing Supreme Court precedent and unnecessary limits the modified categorical approach.

Prior to <u>Descamps</u>, no Supreme Court decision held or suggested that a burglary statute – or any other statute, for that matter - must include every statutory alternative as a separate element that must be found by a jury pursuant to the relevant state law. <u>Lopez-Valencia</u>, 798 F.3d at 868 (before

<u>Decamps</u> whether a statute is divisible "was absent from our jurisprudence").[10] For example, in

<u>Taylor</u>, the Court held an "that an offense constitutes 'burglary' for purposes of a § 924(e) sentence

enhancement if *either* its statutory definition substantially corresponds to 'generic' burglary, *or* the

charging paper and jury instructions actually required the jury to find all the elements of generic

burglary in order to convict the defendant." <u>Taylor</u>, 495 U.S. at 602 (emphasis added). Likewise, in

<u>Shepard</u>, the Court applied the modified categorical approach to a statute that defined burglary "more

broadly, as by extending it to entries into boats and cars," so that "a later court sentencing under the

ACCA might tell whether a prior burglary conviction was for the generic offense." <u>Shepard</u>, 544

U.S. at 18; <u>see also</u> <u>Nijhawan v. Holder</u>, 557 U.S. 29, 41 (2009) (explaining the modified categorical

approach was developed for "determining which *statutory phrase* (contained within a statutory

provision that covers several different generic crimes) covered a prior conviction.") (emphasis

added); <u>Johnson I</u>, 559 U.S. at 144 (stating that when the offense of conviction "contains *statutory*

*phrases* that cover several different generic crimes, the 'modified categorical approach' that we have

---

[10] Granted, previous Supreme Court opinions discussed when statutory alternatives should be *treated* as separate offenses. For example, in <u>Chambers v. United States,</u> the Court stated:

> Where Massachusetts, for example, placed within a single, separately numbered statutory section … burglary of a "building, ship, vessel or vehicle," this Court found that the behavior underlying, say, breaking into a building differs so significantly from the behavior underlying, say, breaking into a vehicle that for ACCA purposes a sentencing court must treat the two as different crimes.

555 U.S. at 126. Similarly, in <u>Nijhawan v. Holder</u>, 557 U.S. 29, 35 (2009), the Court explained:

> [S]ometimes a separately numbered subsection of a criminal statute will refer to several different crimes, each described separately…. A single Massachusetts statute section .. for example, criminalizes breaking into a "building, ship, vessel or vehicle." In such an instance, we have said, a court must determine whether an offender's prior conviction was for the violent, rather than the nonviolent, break-ins that this single five-word phrase describes (e.g., breaking into a building rather than into a vessel).

(Citation omitted.) Thus, the issue is not whether these alternative "crimes" are defined as separate, divisible "elements"; the issue is whether the typical conduct underlying the alternatives "differs so significantly" such that the court should consider the alternatives as different crimes.

approved permits a court to determine which statutory phrase was the basis for the conviction") (citation omitted) (emphasis added).

Even Descamps recognized the application of the modified categorical approach to a statute similar to Oregon's, with no discussion of whether the statute alternatives were elements. Descamps, 133 S. Ct. at 2284 (when a burglary statute includes "'boats and cars' as well as buildings," sentencing courts may "scrutinize a restricted set of materials...to determine if the defendant had pleaded guilty to entering a building or, alternatively, a car or boat"); see also id. at 2296 (Alito, J., dissenting) (explaining that, under Supreme Court precedent, a statute broader than generic burglary with respect to the "place burglarized" "does not preclude application of the modified categorical approach"). Combined, these Supreme Court cases hold that when the relevant burglary statute contains an alternative matching the generic offense such as a "building," the court may look to the charging document, jury instructions, plea agreement and plea colloquy to discern whether the defendant was convicted of burglary of a building. It simply does not matter whether statutory alternatives are elements or means; the statutory alternatives permit the court to examine the judicially approved set of documents and determine whether a jury found or the defendant admitted the alternative matching the generic element.

Not only does the divisibility analysis conflict with prior Supreme Court precedent, it unnecessarily complicates the modified categorical approach. Essentially, to determine whether a statute is divisible into alternative "elements," a court must determine if the relevant state law requires a hypothetical jury to find the alternative elements in every hypothetical case.[11] However,

---

[11]In Almanza-Arenas, the Ninth Circuit stated that a court "confirms" the initial state law interpretation "by examining the *Shepard* documents to see whether the statute displays alternative elements instead of alternative means." 809 F.3d at 524. Aside from the fact that the divisibility of a statute should be a uniform rather than case-by-case assessment, such confirmation would appear to be a minor variant of the modified categorical approach: reviewing the judicial record to determine if the generic element formed the basis of conviction. Cf. Almanza-Arenas, 809 F.3d at 533, n.3 (Watford, J., concurring in judgment) ("As I understand *Descamps*' instructions, we may look to the Shepard documents only after we've first determined that the statute is divisible, not when trying to decide whether the statute is divisible or indivisible.").

16  - OPINION AND ORDER

this analytical step is unnecessary; it is through the modified categorical approach that the court determines whether the jury actually found or the defendant actually admitted the statutory alternative matching the generic offense. Simply because state law does not *always* require a jury to find, for example, that a dwelling is an "ordinary" building, does not mean that a jury can *never* make such a finding or that a defendant can *never* admit to such an element. In fact, that is precisely the function of the modified categorical approach: to determine whether the jury actually found or the defendant actually admitted the generic element.

Take, for example, a defendant who has a prior conviction for an offense with an element that may be satisfied by one of two alternatives, and one alternative corresponds with the relevant generic offense. In such a case, the jury could find that the defendant's conduct met one of the two alternatives and satisfied the element; but if the statute and pattern jury instructions do not require the jury to agree on what specific conduct or which specific alternative satisfied the element, the statute is indivisible under <u>Descamps</u>. The modified categorical approach would not apply, and the offense would not qualify as a predicate ACCA offense. However, application of the modified categorical approach would lead to the same result. If the underlying jury instructions and verdict form in that case reflected that the jury was not required to find which alternative satisfied the element, the sentencing court would be unable to discern whether the defendant was convicted of the alternative matching the generic offense. <u>See</u> <u>Rendon</u>, 782 F.3d 466, 470 (9th Cir. 2015) (Graber, J., dissenting from denial of reh'g en banc) ("In all cases, the modified categorical approach will return a match *only* if we know that what the jury found is within the federal definition. It is irrelevant whether, in the abstract, a jury would have to be unanimous in the unusual case in which evidence suggested that a defendant possibly [committed both alternatives]."). The same is true in plea situations; if the defendant did not admit the alternative element matching the generic element and admitted only to the offense charged in the alternative, the plea documents would not show that the defendant was convicted of the generic offense. Thus, the conviction would not qualify as an ACCA

predicate even if the modified categorical approach was permitted.

While the divisibility requirement does not disqualify any more convictions than proper application of the modified categorical approach would, it does disqualify convictions that otherwise constitute violent felonies under the ACCA. Again, take a defendant who has a conviction for an offense with the elements as described above. If the jury instructions in that particular case required the jury to decide which alternative satisfied the element, or if the defendant admitted to a specific alternative that satisfied the element, the sentencing court would be able to determine whether defendant was convicted of the alternative matching the generic offense. Almanza-Arenas, 809 F.3d at 533  (Watford, J., concurring in judgment) ("If the statute is drafted in the alternative, it's at least possible that the offense of conviction was narrowed by selecting one of the statutorily specified alternatives."). However, this type of statute remains indivisible pursuant to Descamps and precludes the modified categorical approach, even if the court could determine that the defendant was convicted of the generic offense.

One reason for the Court's adoption of "divisible statutes" was its apparent concern that district courts would engage in improper fact-finding when discerning whether a defendant's prior conviction met the elements of a generic offense. Descamps, 133 S. Ct. at 2287-88; see also Marcia-Acosta, 780 F.3d 1244, 1252-53 (9th Cir. 2015). Such unease may be well-founded in cases such as Descamps, where the underlying statute does not include elements of the generic offense as alternatives, and the defendant could not have been convicted of the generic offense. If the sentencing court proceeded with the modified categorical approach in that situation, the court would be looking to facts other than the basis of conviction.

However, when a statute includes all elements of the generic offense as alternatives (in whatever form), the court looks to the approved judicial record to assess whether the defendant was convicted of the alternative matching the generic offense; i.e., whether a jury necessarily found or a defendant necessarily admitted the elements of the generic offense. For example, in cases tried to a

jury, "if the indictment and jury instructions show that the defendant was charged only with burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement." Taylor, 495 U.S. at 602. In cases involving a guilty plea,

> the closest analogs to jury instructions would be ... *the statement of factual basis for the charge, shown by a transcript of plea colloquy or by written plea agreement presented to the court, or by a record of comparable findings of fact adopted by the defendant upon entering the plea.* With such material in a pleaded case, a later court could generally tell whether the plea had 'necessarily' rested on the fact identifying the burglary as generic, just as the details of instructions could support that conclusion in the jury case, or the details of a generically limited charging document would do in any sort of case."

Shepard, 544 U.S. at 21 (emphasis added (citations and footnote omitted). Unless a charging document "narrows the charge to generic limits," the defendant's "own admissions or accepted findings of fact" are the only manner of confirming "the factual basis for a valid plea." Id. at 25 (plurality opinion); see also Johnson I, 559 U.S. at 144. Importantly, the court is not concerned with what the defendant actually did, but rather what the defendant *admitted* doing. In that sense, the court is not engaging in independent fact-finding as to the defendant's underlying conduct.

Accordingly, looking to judicially-approved documents, such as plea agreements or plea colloquies, to ascertain the statutory alternative of conviction does not constitute an impermissible fact-based inquiry. It bears repeating that Taylor and Shepard recognized the dangers of judicial fact-finding and nonetheless approved application of the modified categorical approach to a burglary statute like Oregon's. Taylor, 495 U.S. at 602 (modified categorical approach permitted review of charging document and jury instructions "where a jury was actually required to find all the elements of generic burglary"); Shepard, 544 U.S. at 25-26 (rejecting the government's position that sentencing courts may look to police reports to ascertain "what the defendant and state judge must have understood the as the factual basis of the prior plea" due to Sixth Amendment concerns); see also Descamps, 133 S. Ct. at 2283-84 (discussing Taylor and Shepard).

In sum, the narrow holding of Descamps does not require, and the underlying purpose of the modified categorical approach is not served, by the divisible elements analysis. Determining whether a statute is divisible into elements of functionally separate crimes - while hypothetically possible - is, in reality, oftentimes difficult and will result in the unnecessary ineligibility of a vast number of otherwise-qualifying burglary offenses.[12] When combined with Rendon, the result is, as the government's attorney remarked, a Byzantine analytical framework that strays far from the seminal holdings of Taylor and Shepard and leaves courts struggling to make sense out of the "hopeless tangle" the ACCA has become. Murray v. United States, 2015 WL 7313882, at *5 (W.D. Wash. Nov. 19, 2015).

---

[12] Under the analysis seemingly dictated by Descamps and Rendon, Oregon's and Washington's burglary statutes are not the only casualties; if definitions of an element must be separate elements themselves, no residential burglary statute of the states comprising the Ninth Circuit likely would qualify as generic burglary. See Alaska Stat. § 11.46.300(a)(1) ("A person commits the crime of burglary in the first degree if the person [commits second-degree burglary] and the building is a dwelling."); id. § 11.81.900(b)(5) ("'building,' in addition to its usual meaning, includes any propelled vehicle or structure adapted for overnight accommodation of persons or for carrying on business"); Alaska. Cr.J.I. 11.46.300, 11.81.900(b)(5); Ariz. Rev. Stat. § 13-1507(A) ("A person commits burglary in the second degree by entering or remaining unlawfully in or on a residential structure with the intent to commit" a felony); id. § 13-1501(11) ("'Residential structure' means any structure, movable or immovable, permanent or temporary, that is adapted for both human residence and lodging whether occupied or not."); Ariz. Cr.J.I. 15.07, 15.01(11); Haw. Rev. Stat. § 708-810(1)(c) ("A person commits the offense of burglary in the first degree if the person intentionally enters or remains unlawfully in a building, with intent to commit therein a crime … and …the building is such a dwelling."); id. § 708-800 ("Building' includes any structure, and…any vehicle, railway car, aircraft, or watercraft used for lodging of persons therein."); Haw. Cr.J.I. 10.00, 10.03; Idaho Code § 18-1401 ("Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse, or other building, tent, vessel, vehicle, trailer, airplane or railroad car, with intent to commit any theft or any felony, is guilty of burglary."); Idaho Cr.J.I. 511; Mont. Code § 45-6-204(1)(a) (a person commits burglary by entering or remaining unlawfully in an "occupied structure" with intent to commit a crime); id. § 45-2-101(47) ("'Occupied Structure' means any building, vehicle, or other place suitable for human occupancy or for night lodging of persons or for carrying on business [and] any outbuilding that is immediately adjacent."); Mont. Cr.J.I. 6-104; Nev. Rev. Stat. § 205.060(1) ("a person who, by day or night, enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel, vehicle, vehicle trailer, semitrailer or house trailer, airplane, glider, boat or railroad car, with the intent to commit…any felony…is guilty of burglary"); id. § 193.0125 ("'Building' includes every house, shed, boat, watercraft, railway car, tent or booth…suitable for affording shelter for any human being, or as a place where any property is or will be kept for use, sale or deposit.").

As it stands, <u>Descamps</u> and <u>Rendon</u> are binding precedent this Court must apply. As such, I must find that the various definitions of "building" constitute alternative means rather than alternative elements, and Oregon's first-degree burglary statute is not divisible. Accordingly, the modified categorical approach is unavailable, and defendant's convictions for first-degree burglary do not qualify as predicate offenses for purposes of the ACCA.[13]

## CONCLUSION

Defendant was not convicted of three predicate offenses under the ACCA, and he is not subject to the fifteen-year mandatory minimum. Therefore, defendant's Motion under 2255 (doc. 23) is GRANTED. Defendant's previous sentence of 180 months is VACATED and will be modified to reflect the correct sentence without the ACCA enhancement. The parties agree that defendant has served a sentence in excess of ten years, the maximum possible sentence. Accordingly, defendant shall be released from custody immediately.

DATED this ___5th___ day of February, 2016.

<u>Ann Aiken</u>
Ann Aiken
United States District Judge

---

[13]Even if the definitions of building are deemed elements and the statute divisible, the judicial record still must establish that the "dwelling" was a building. Here, the indictments alleged burglary of two "occupied dwellings" located at "258 N. 38th Place" and "2330 Otto Street" and of a "dwelling located at 3540 Mill Street." The judgments reflect convictions for first-degree burglary. Gov't Consolidated Ans. Exs. 1-3. The Ninth Circuit has held that a charging instrument alleging burglary of a "building" combined with a street address suffices to establish a building. <u>United States v. Snyder</u>, 643 F.3d 696, 698 (9th Cir. 2011); <u>United States v. Stephens</u>, 27 F.3d 1031, 1034 (9th Cir. 2001) ("building" and a street address "provide an adequate basis to conclude that 'building' is used in its usual sense."); <u>United States v. Ezell</u>, 337 Fed. App'x 623, 624 (9th Cir. June 15, 2009) (accord); <u>but see</u> <u>United States v. Adams</u>, 358 Fed. App'x 820, 821 (9th Cir. Nov. 25, 2009) ("Without drawing an impermissible inference, there is an insufficient factual basis to establish that the street address listed in the indictment was necessarily that of a dwelling or other structure that would satisfy generic burglary."). Under <u>Snyder</u>, I likely could find that the term "dwelling" and the street address established a building. However, I recognize that a street address alone does not necessary indicate whether the dwelling was a building rather than, for example, a vehicle adapted for overnight accommodation located at that address. <u>Snyder</u>, 5 F. Supp. 3d at 1263. The government presents no other plea document to clarify the nature of the dwelling. Therefore, defendant's conviction likely fails to meet generic burglary even if the modified categorical approach applied.